UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SHANE JOHNSON,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>AL MADSEN, unit manager at SDSP, in his individual and official capacities; HOPE JOHNSON, administrative remedy coordinator at SDSP, in her individual and official capacities; and DARIN YOUNG, warden at SDSP, in his individual and official capacities.<br><br>　　　　　　Defendants. | 4:14-CV-04005-KES<br><br><br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Shane Johnson, is an inmate on parole from the South Dakota State Penitentiary (SDSP) in Sioux Falls, South Dakota. Johnson filed a pro se civil rights lawsuit pursuant to 42 U.S.C. § 1983 and requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. Docket 1, 3. Johnson alleged that defendants failed to protect him from substantial risks of serious harm in violation of the Eighth Amendment and he was denied access to the courts. Docket 1. Additionally, Johnson moved the court to appoint him counsel. *Id.* On March 21, 2014, the court granted Johnson leave to proceed in forma pauperis and dismissed his complaint in part. Docket 7. Specifically, the court determined Johnson had pleaded facts sufficient to support his Eighth

Amendment failure to protect claim, but dismissed his access to courts claim. *Id.* The court also denied his request for the appointment of counsel. *Id.*

On May 2, 2014, defendants filed an answer to Johnson's complaint, denying all claims against them and asserting a number of affirmative defenses. Docket 15. Pending before the court is defendants' motion for summary judgment, which was filed on August 25, 2014. Docket 19. Johnson has not responded to the motion, and the time for a response has passed. The court grants defendants' motion for summary judgment.

## BACKGROUND

According to defendants' statement of undisputed material facts, to which Johnson has not objected:[1]

Johnson is an inmate in the custody of the South Dakota Department of Corrections (SDDOC). Docket 1. He was incarcerated at the SDSP in 2006, but was released on parole on or about February 28, 2014. Docket 21 at ¶ 1. Defendant Al Madsen is an employee of the SDDOC and has served as a Unit Manager of the SDSP since 2002. *Id.* at ¶ 2. Defendant Madsen served as the Unit Manager of the North/South unit of the SDSP in June 2012, which is the unit where Johnson was housed. *Id.* Defendant Hope Johnson is also an employee of the SDDOC and has, since on or about July 1, 2012, served as the Corrections Program and Contracts Manager. *Id.* at ¶ 3. In her position, defendant Johnson also serves as the Administrative Remedy Coordinator at

---

[1] Pursuant to Local Rule 56.1.D, "[a]ll material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing part's statement of material facts."

2

the SDSP. *Id.* Defendant Darin Young is employed by the SDDOC and has served as warden of the SDSP since May 24, 2013. *Id.* at ¶ 4.

In order to determine suitable housing arrangements for inmates at the SDSP, prison staff rely on SDDOC Policy 1.4.B.3., referred to as the "Adult Internal Management System" (AIMS). *Id.* at ¶ 10; Docket 20-1 at ¶ 5, Docket 20-2 at ¶ 5, Docket 20-3 at ¶ 5. The policy states that "[t]he [AIMS] is designed to identify male inmates based on their life history and observed behavior while incarcerated and separate them into homogenous living groups as an effective management tool to reduce tension, violence and disruptive behavior." Docket 20 at ¶ 10; Docket 20-9 at 1. Thus, institutions such as the SDSP "will utilize the AIMS classification procedures for male inmates in general population housing assignment as well as male inmates in segregation and specialized populations[.]" Docket 20 at ¶ 10, Docket 20-9 at 1. Additionally, prison staff rely on SDDOC Policy 1.4.B.16, referred to as "PREA Institutional Risk Screens." Docket 20 at ¶ 11; Docket 20-10 at 1. The policy states that "[t]he PREA Risk Screen score will be utilized for assigning cells, rooms and beds for inmates at all adult DOC facilities" and "[i]nmates will be assigned a cell (housing assignment) based in part on their assigned initial PREA Risk Screen score." Docket 20 at ¶ 11; Docket 10-10 at 1, 4. Johnson and Benjamin Donahue, another inmate at the SDSP, were determined to be compatible for housing purposes based on their AIMS group designation and PREA Risk Screen scores. Docket 20 at ¶ 13. Prior to their placement as cellmates,

3

Johnson and Donahue lived near one another on the same prison tier without issue or complaint. *Id.* at ¶ 15; Docket 20-1 at ¶ 10.

Pursuant to SDDOC Policy 1.4.B.3, prisoners may also request to "be placed in an alternative housing unit other than what their designated AIMS code indicates based on recommendations from DOC staff." Docket 21 at ¶ 17; Docket 20-9 at 2. The policy's stated purpose for alternative housing placement is "the safety and security of inmates and their housing units." Docket 20-9 at 2. Staff must complete an Alternative AIMS Housing Placement form and seek the approval of a Unit Manager, Deputy Warden, and Warden. *Id.*

Donahue was temporarily placed in a special housing unit (SHU) on September 24, 2013, following an argument with a staff member wherein Donahue refused to return to his cell. Docket 21 at ¶ 39; Docket 20-35 at 2; Docket 20-1 at ¶ 24. Donahue remained in the SHU until September 30, 2013, when he was reassigned to a different cell in another part of the SDSP. Docket 21 at ¶ 41; Docket 20-35 at 2; Docket 20-1 at ¶ 28. That same day, an altercation between Donahue and Johnson broke out in the "South Flag East Hall" portion of the SDSP because Donahue suspected Johnson of taking his personal property. Docket 21 at ¶ 42; Docket 20-36 at 2.

According to prison staff, neither Johnson nor Donahue made a request for alternative housing while they were cellmates. Docket 21 at ¶¶ 20, 23; Docket 20-1 at ¶¶ 14, 17; Docket 20-2 at ¶ 13; Docket 20-6 at ¶ 13. Prior to September 30, 2013, there are no records of any altercations between Johnson and Donahue, nor had any prisoners reported any such incidents to prison

4

staff. Docket 21 at ¶¶ 23-27; Docket 20-1 at ¶¶ 17-19; Docket 20-2 at ¶¶ 13-15; Docket 20-4 at ¶¶ 3-4; Docket 20-6 at ¶¶ 13-15. Johnson did not complain to prison staff or request to be placed in protective custody due to concerns for his safety. Docket 21 at ¶ 33; Docket 20-1 at ¶ 18, Docket 20-2 at ¶ 14, Docket 20-6 at ¶ 14. Additionally, medical personnel had not treated Johnson as a result of any altercation between the two inmates prior to September 30, 2013. Docket 21 at ¶¶ 29-32; Docket 20-3 at ¶¶ 5-8; Docket 20-31.

## LEGAL STANDARD

"Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Clark v. Kellogg, Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); *see also* Fed. R. Civ. P. 56(a). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and by affidavit or otherwise designate specific facts showing that there is a genuine issue for trial." *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (internal quotations and citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although "the court is required to . . . give [the nonmoving] party the benefit of all reasonable inferences to be drawn from the underlying facts," *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980), the nonmoving party

may not "rest upon mere denials or allegations." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). Instead, the nonmoving party must "set forth specific facts sufficient to raise a genuine issue for trial." *Id.*

Prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). Moreover, the court is not "required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Id.* Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980).

## DISCUSSION

Johnson alleges that defendants violated the Eighth Amendment by failing to protect him from the harm inflicted by Donahue. Docket 1 at 4.[2] In

---

[2] After the court screened Johnson's complaint pursuant to 28 U.S.C. § 1915, the only count that remained was Johnson's allegation that defendants

6

order to remedy this alleged constitutional violation, Johnson seeks compensatory and injunctive relief. *Id.* at 7. Defendants assert that they are immune from suit for money damages, and that Johnson's requests for injunctive relief are moot. Docket 20 at 32-35.

## I.   Immunity

### A.   Official Capacity Claims

Johnson has sued each of the defendants in their official capacities. Docket 1 at 2. As the Supreme Court has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66. The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.*

Here, as part of Johnson's remedy, he seeks to recover money damages. Docket 1 at 7. Consequently, because Johnson has sued defendants in their official capacities, Johnson has asserted a claim for money damages against

---

failed to protect him in violation of the Eighth Amendment. Docket 7 at 4-5. Defendants nonetheless argue that summary judgment is appropriate, *inter alia*, on a claim for deliberate indifference to serious medical needs. *See* Docket 20 at 22-32. That is not, however, a claim asserted by Johnson, nor was it a claim that survived screening by this court.

the state of South Dakota. Additionally, the state of South Dakota has not waived its sovereign immunity. Therefore, to the extent Johnson seeks to hold defendants liable in their official capacities for money damages, the court finds that defendants are protected by sovereign immunity and are entitled to judgment on this issue as a matter of law.

### B.    Individual Capacity Claims

Johnson has also sued each of the defendants in their individual capacities. Docket 1 at 2. A § 1983 claim for money damages may proceed against state officials who are sued in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 27 (1991). The qualified immunity doctrine, however, will function to protect from liability those defendants whose actions were objectively reasonable in light of clearly established constitutional rights. *Stanton v. Sims*, 134 S. Ct. 3, 4-5 (2013); *see also Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007) (" 'The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.' ") (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). To determine whether qualified immunity is appropriate, the court considers "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If the answer [to whether a constitutional right was violated] is no, [the court will] grant qualified immunity," and enter summary

judgment in favor of defendants. *Grayson v. Ross*, 454 F.3d 802, 808–09 (8th Cir. 2006).

Under the Eighth Amendment, prisoners have a clearly established right to be protected from violence at the hands of other inmates and prison officials must take reasonable measures to ensure their well-being. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). A failure-to-protect claim has both an objective component and a subjective component. *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998). The objective component asks "whether the situation presented a substantial risk of serious harm," while the subjective component asks "whether the prison official was deliberately indifferent to the inmate's health or safety." *Id.* (citing *Farmer*, 511 U.S. at 834). In order to establish the deliberate indifference element, Johnson would have to show that defendants "reckless[ly] disregard[ed] a known, excessive risk of serious harm to inmate health or safety." *Id.*

Defendants' undisputed facts demonstrate that both Johnson and Donahue were determined to be compatible for housing purposes based on their AIMS group designation and PREA Risk Screen scores. Per SDSP procedure, these policies are utilized for each prisoner in order to help prison officials determine appropriate housing assignments. Prior to their placement as cellmates, both Johnson and Donahue were housed near one another without issue or complaint. Additionally, during their time as cellmates, neither prisoner requested to be placed in alternative housing or in protective custody. Moreover, at the time of their altercation on September 30, 2013, Donahue had

already been relocated to another cell. Prior to that altercation, there were no records of any incidents between Johnson and Donahue, and no other prisoners reported any such incidents to prison staff. Likewise, Johnson's medical records show that he had not reported or received treatment as a result of a similar episode involving himself and Donahue.

Based on the foregoing, there is no evidence that defendants recklessly disregarded a known, excessive risk of serious harm to Johnson's health or safety.[3] Johnson has not advanced any evidence that defendants had the requisite mental state to survive summary judgment on this issue. As the Supreme Court observed, "[i]t is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. Because Johnson has not advanced facts that show his constitutional rights have been violated, the court finds defendants are protected by qualified immunity on this issue and are entitled to judgment as a matter of law.

---

[3] Johnson's complaint contains allegations that defendant Madsen deliberately provoked Donahue to attack Johnson. *See, e.g.*, Docket 1 at 13. Madsen's sworn statement denies this conduct ever occurred. Docket 20-1 at ¶¶ 20-23. Additionally, Johnson received an official response to a request for an administrative remedy containing the same allegations that, "The appropriate staff reviewed your request and found no merit to your claims." Docket 1-1 at 39-40. Thus, Johnson has not shown a genuine dispute exists regarding the alleged provocation.

**II.     Mootness**

In addition to seeking money damages, Johnson has also requested injunctive relief. Specifically, Johnson seeks an order from this court requiring defendants to provide him with dental care, neurological assistance, physical therapy, treatment for post-traumatic stress, and counseling. Docket 1 at 7.[4]

The Eighth Circuit has stated that once a prisoner is released from incarceration, his or her request for injunctive relief is rendered moot. *See, e.g., Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991). The record shows that Johnson was paroled from the SDSP on or about February 28, 2014. Because Johnson is no longer incarcerated, he may seek treatment for his conditions from his chosen physician. *Pyle v. Huskins*, 2011 WL 2435433 at *2 (W.D. Ark. 2011). Consequently, Johnson's claims for injunctive relief are rendered moot, and defendants are entitled to judgment as a matter of law on this issue.

---

[4] Johnson also requested legal assistance and for criminal charges to be brought against the appropriate parties. Docket 1 at 7. When this court screened Johnson's complaint, it denied his request for legal assistance. Docket 7 at 7. Additionally, Johnson's request for criminal charges is not a cognizable form of relief. *See, e.g., Diamond v. Charles*, 476 U.S. 54, 64-65 (1986) (noting " 'a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.' ") (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *see also Reed v. Weber*, 2010 WL 3363402 at *2 (D.S.D. 2010) ("If a party believes criminal charges are appropriate, the federal district court is not the proper entity to initiate those proceedings.").

## CONCLUSION

Defendants enjoy sovereign immunity for Johnson's claims for damages made against them in their official capacities. Additionally, defendants are protected by qualified immunity for Johnson's claims for damages made against them in their individual capacities. Finally, because Johnson is no longer incarcerated at the SDSP, Johnson's requests for injunctive relief are moot. Accordingly, it is

ORDERED that defendants' motion for summary judgment (Docket 19) is granted.

Dated February 12, 2015.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE